# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

GUDONAVON TAYLOR,

        Petitioner,   :   Case No. 3:16-cv-398

  - vs -               District Judge Thomas M. Rose
                         Magistrate Judge Michael R. Merz

JIM BUNTING, WARDEN,
  Marion Correctional Institution,

                                :
        Respondent.

## REPORT AND RECOMMENDATIONS

With the assistance of counsel, Petitioner Gudonavon Taylor invoked federal habeas corpus jurisdiction under 28 U.S.C. § 2241. He initially filed in the United States District Court for the Northern District of Ohio at Toledo and Judge Lioi transferred it to this District under 28 U.S.C. § 2241(d) because Petitioner was convicted in the Montgomery County Common Pleas Court (ECF No. 3). Upon transfer the case was assigned to District Judge Rose and referred to the undersigned by operation of the Dayton General Order of Assignment and Reference (Day 13-01).

Because Mr. Taylor is in custody pursuant to judgment of a state court, these proceedings are governed by 28 U.S.C. § 2254 and the Rules Governing § 2254 Cases. Rule 4 of those Rules provides in pertinent part: "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

Taylor pleads two grounds for relief:

> **Ground One:** The trial court abused its discretion and violated petitioner['s] Due Process Rights to a fair and impartial trial and right to present evidence on his behalf at trial as guanranteed [sic] by the 5th, 6th, and 14th Amendments to the United States Constitution when it did not allow the petitioner to try on state exhibit 46.
>
> **Ground Two:** The trial court violated petitioner['s] Fifth and Fourteenth Constitutional Amendment Rights when the court sentenced him to multiple consecutive sentences for a single course of conduct.
>
> **Supporting Facts:** The alleged felonious assault was not committed separately from the murder.

(Petition, ECF No. 1.)

**Procedural History**

Taylor was indicted by the Montgomery County grand jury on three counts of murder, two counts of felonious assault, and one count of having weapons while under disability, each with a three-year firearm specification. On April 18, 2008, Taylor was charged by indictment with an additional charge of discharging a firearm on or near prohibited premises, with a three-year firearm specification. *State v. Taylor,* 2013 Ohio 186, ¶ 2, 2013 Ohio App. LEXIS 135 (2nd Dist. Jan. 25, 2013)("*State v. Taylor I*"). A trial jury convicted him of three counts of murder, two counts of felonious assault, and firearms discharge offense, all with firearm specifications, and the trial judge convicted him on the weapons under disability charge and sentenced him to imprisonment for forty-one years to life. *Id.* at ¶ 5. He appealed to the Second District which affirmed the conviction. *Id.* at ¶ 60. The Ohio Supreme Court declined jurisdiction over an

appeal.  *State v. Taylor*, 135 Ohio St. 3d 1459 (2013).  The Second District granted a motion to reopen under Ohio R. App. P. 26(B), but then reaffirmed the conviction.  *State v. Taylor,* 2014-Ohio-3647, 2014 Ohio App. LEXIS 3586 (2nd Dist. Aug. 22, 2014)("*State v. Taylor II*"), appellate jurisdiction declined, 141 Ohio St. 3d 1490 (2015).

Mr. Taylor also reports that he filed a state petition for writ of habeas corpus under Ohio Revised Code § 2725.01, et seq., on March 14, 2016, in the Ohio Twelfth District Court of Appeals, raising the same claims he makes here (Petition, ECF No. 1-1, PageID 12, ¶ 11).  That petition was reportedly dismissed May 19, 2016, and Taylor did not appeal to the Ohio Supreme Court. *Id.*  at PageID 15, ¶ 12(d)(4).  Taylor then filed the instant Petition

## Analysis

Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida*, 463 U.S. 939 (1983).  "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the

United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000).

**Ground One:  Asserted Exclusion of Evidence**

In his First Ground for Relief, Mr. Taylor asserts abuse of discretion and denial of federal constitutional rights when the trial judge did not allow him to try on in front of the jury State's exhibit 46, a coat connected with identifying the offender in this case.

This Court cannot review the state courts' decision on the abuse of discretion question because abuse of discretion is not a denial of due process *Sinistaj v. Burt*, 66 F.3d 804 (6th Cir. 1995).

Regarding State's exhibit 46, the Second District found the following facts from record:

> **[\*P36]** Taylor stated that when he was taken to the Safety Building for questioning, he denied using the nickname DonDon because he was afraid that "it had to be some type of secret indictment for selling dope," since "that's what all the crackheads call me." Taylor stated that from 2007 until the present, he has remained the same size. Taylor denied talking to Wright about his case. When shown Exhibit 46, the jacket, Taylor denied that it belonged to him. Defense counsel asked Taylor to try on the parka, and the following exchange occurred at sidebar:
>
> MR. BRANDT: I'll object, Your Honor, for the record. First, as to relevance. We're talking about almost three years after the fact.
>
> * * *
>
> MR. BRANDT: And I don't know what relevance it would be whether it fits him now versus if it fit him back in 2007.
>
> MR. SKELTON: Your Honor, the relevance is the entire case to some extent is based on the appearance of this coat on the

Defendant. They could argue on cross-examination anything they want, but I think the rules will allow this specific type of evidence to come in.

\* \* \*

MR. BRANDT: He stated that it's not his coat. \* \* \*He was a juvenile then. He's now technically an adult. I just don't understand the relevance it has whether the coat fits him here today when he says it wasn't his.

MR. SKELTON: Okay. Well, Your Honor, I've already had him testify that he was approximately the same height and weight as when he came in. They can cross on that. There's testimony all over this record about the length of the coat.

\* \* \*

MR. SKELTON: It's clearly probative.

\* \* \*

THE COURT: \* \* \*Let me ask this. Has the State had any thoughts about what rebuttal might be required should the Defendant try it on or rebuttal evidence, I mean?

MR. BRANDT: You know, I guess the potential slippery slope of evidence in terms of witnesses coming in to testify as to what his physical stature was back three years ago.

MR. SKELTON: We have jail records for that if you want.

MR. BRANDT: Jail records, you know, there's an issue of whether that's self-reporting or anything else. I'm talking about actual witnesses. So I didn't anticipate, quite honestly, that the Court would allow him to try it on, so.

THE COURT: I'm going to take a break and figure it out.

\* \* \*

THE COURT: Ladies and gentlemen, the Court has determined that due to the age of the Defendant at the time of the shooting and the potential that the size of the Defendant can change in two years. Mine has, for example, although not in the same direction as

we're concerned about. We're not going to allow the Defendant's last request.

[*P37]  Defense counsel then requested and received permission to videotape Taylor trying on the coat outside of the presence of the jury for purposes of appeal.

[*P38]  On cross-examination, Taylor testified that Brown worked as a "runner" for him and Bryson. Taylor stated that when the officers approached him on December 11, 2007, near the scene of the shooting, he "was thinking it was for truancy." Taylor stated that the officers asked him if his name was DonDon before they told him that they wanted to interview him about the shooting, and he stated that he lied to get out of trouble for a drug-related offense.

[*P39]  The prosecutor asked Taylor if he had grown in the last three years, and Taylor stated that he has been "5'11 3/4"" since he was 16 years old. Defense counsel then asked the court again at sidebar to allow Taylor to try on the coat, and the court declined the request.

[*P40]  After the defense rested, Detective Daborde testified on rebuttal that in the course of an interview with Walder, she identified the coat taken from Taylor's mother as Taylor's coat.

[*P41]  Immediately before closing statements, the court indicated that upon further review of the issue, it would permit Taylor to try on the parka in the presence of the jury. Counsel for Taylor stated, in part, that the defense is not "going to try to reopen their case and put something into evidence that the Court has already instructed the Jury that they shouldn't consider. * * * ."

*State v. Taylor I.*

Taylor presented his claim regarding State's exhibit 46 as his second assignment of error on direct appeal and the Second District decided it as follows:

[*P51]  Taylor's second assigned error is as follows:

"TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT ALLOW THE DEFENDANT TO TRY ON STATE EXHIBIT 46 WHICH RESULTED IN A DENIAL OF A FAIR TRIAL."

> **[*P52]** We agree with Taylor that the trial court's editorial comments that it "determined that due to the age of the Defendant at the time of the shooting and the potential that the size of the Defendant can change in two years. Mine has, for example, although not in the same direction as we're concerned about," was improper. The trial court, however, reconsidered its ruling prior to closing statements, and Taylor was given and refused the opportunity to try on the jacket in the presence of the jury. Taylor accordingly waived his argument that the trial court abused its discretion when it denied his request to try on the coat. Finally, we have viewed the video of Taylor trying on Exhibit 46, and the fit of the jacket is as Tamlyn described and as the State represents. Taylor's second assigned error is overruled.

*State v. Taylor I.*

To prevail on his First Ground for Relief, Taylor must demonstrate that the Second District's decision of this issue is contrary to or an objectively unreasonable application of holdings of the United States Supreme Court.  He has not done so.  In his counsel's memorandum in support of the Petition, he cites only Ohio case law and all of it on the general proposition that a trial judge should not express an opinion on the evidence  (ECF No. 1, PageID 3-5).  That notion is so widely shared that the first case relied on by Petitioner, *State ex rel Wise v. Chand*, 21 Ohio St. 2d 113 (1970), relies not on any constitutional decisions of the Supreme Court, but on 98 Corpus Juris Secundum 60, Witnesses,§ 347.

In the second case, *State v. Nutter*, 22 Ohio St. 2d 116 (1970), the Ohio Supreme Court reversed a conviction for having sex with an insane person even though the trial judge had usurped the jury's role by instructing it that he had found the victim to be insane.  The opinion by Justice Robert Duncan, later a District Judge of this Court, did not cite any Supreme Court precedent, but rather Ohio Revised Code § 2945.04, which embodies the constitutional principle requiring proof of every element of a crime to the jury beyond a reasonable doubt.  The trial judge in Taylor's case did not take an element of the crime from the jury.

In *State v. Sutton*, 7 Ohio App. 2d 178 (1st Dist. 1966), Petitioner's third citation, the court upheld a trial judge's authority to comment on the evidence so long as he or she did not go so far as to tell the jury that only one inference can properly be drawn from the evidence.  Again, no federal constitutional authority is relied on.

*State v. Wade*, 53 Ohio St. 2d 182 (1978), is Petitioner's fourth precedent.  In that capital case the Ohio Supreme Court set forth general principles for deciding whether a trial judge's comments are prejudicial, but cited no constitutional authority and affirmed the conviction.

The Second District, of course, agreed on Taylor's general point and held that it had been error for the trial judge to express an opinion, which he did in the course of his first ruling on the relevance of the jury's viewing Taylor in the coat.  But it found he had waived any error by refusing the trial judge's offer to correct the error.  It is this ruling that Taylor must show is contrary to Supreme Court precedent.

The federal courts have been very supportive of the contemporaneous objection rule which requires parties to bring trial court errors to the trial judge's attention so that they can be corrected.  That rule has consistently been held to be an adequate and independent state ground of decision, raising a procedural barrier to habeas corpus relief when no objection is made. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir.  2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v.  Bradshaw*, 482 F.3d 442 (6th Cir.  2007); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005);  *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing  Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac*, 456 U.S. 107, 124-29 (1982).  *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith*

*v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 131 S. Ct. 185 (2010).  The principle that a trial judge should be allowed to correct an error brought to his or her attention is a necessary corollary of the contemporary objection rule.

Petitioner's position, however, is that the judge's change of mind came too late and the jury had already been "tainted"  and trying the coat on at the time the judge changed his mind "would not have had the same effect. . . ."  (ECF No. 1, PageID 5.)  If he truly believed the jury had been tainted beyond repair, Taylor's proper remedy was to move for a mistrial, which he did not do.  Taylor also presents no Supreme Court precedent for the proposition that failure to move for a mistrial under those circumstances does not constitutionally constitute a waiver of the jury taint claim.

In sum, Taylor has not shown that the Second District's decision on this issue is contrary to or an objectively unreasonable application of United States Supreme Court precedent.  The First Ground for Relief should be dismissed.

**Ground Two:  Failure to Merge Murder and Felonious Assault Convictions**

In his Second Ground for Relief, Mr. Taylor asserts the trial court violated his "Fifth and Fourteenth Constitutional Amendment Rights when the court sentenced him to multiple consecutive sentences for a single course of conduct."

Taylor raised this claim in his reopened direct appeal as his First Assignment of Error and the Second District decided it as follows:

> **[*P6]**   Taylor's first assignment of error is as follows:
>
> **[*P7]**   "THE TRIAL COURT ERRED IN IMPOSING A SENTENCE SEPARATELY FOR ALLIED OFFENSES."

 **[\*P8]** In his first assignment, Taylor contends that the trial court erred when it failed to merge his convictions for felonious assault and murder. Specifically, Taylor points out that there was only one victim in this case, and he asserts that the felonious assault was not committed separately from the murder. Rather, Taylor argues that both offenses were committed as a single course of conduct with a single animus.

 **[\*P9]** The merger of offenses is governed by R.C. 2941.25, which is a "prophylactic statute that protects a criminal defendant's rights under the Double Jeopardy Clauses of the United States and Ohio Constitutions." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 45. R.C. 2941.25 provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

 **[\*P10]** The defendant bears the burden to prove entitlement to merger. *State v. Thomas*, 10th Dist. Franklin No. 10AP-557, 2011-Ohio-1191, ¶ 16.

 **[\*P11]** In *Johnson*, the Supreme Court of Ohio announced a new manner of applying R.C. 2941.25 to determine when offenses are allied offenses of similar import that must be merged. It abandoned the previous test, set forth in *State v. Rance*, 85 Ohio St.3d 632, 1999 Ohio 291, 710 N.E.2d 699 (1999), which called for a comparison of the statutory elements solely in the abstract. *Johnson* held that, when determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. *Id*. at ¶ 44. The Supreme Court explained:

> In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible

to commit one without committing the other. *State v. Blankenship* (1988), 38 Ohio St.3d 116, 119, 526 N.E.2d 816. (Whiteside, J., concurring) ("It is not necessary that both crimes are always committed by the same conduct but, rather, it is sufficient if both offenses *can be* committed by the same conduct. It is a matter of possibility, rather than certainty, that the same conduct will constitute commission of both offenses." [Emphasis sic] ). If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, at ¶ 50, 895 N.E.2d 149 (Lanzinger, J., dissenting).

If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R .C. 2941.25(B), the offenses will not merge.

*Johnson* at ¶ 48-51.

 [*P12]  In the instant case, Taylor argues that his offenses should have merged because his actions in committing the felonious assault and the murder were committed with a single animus against only one victim. The facts before us support the trial court's determination that the felonious assault and the murder of Bryson were not subject to merger. We recognize that a defendant's infliction of multiple wounds in rapid succession may constitute a single act with a single animus for purposes of an allied-offense analysis. *See, e.g., State v. McClendon*, 2d Dist. Montgomery No. 23558, 2011-Ohio-5067 (involving a defendant who shot the victim five times in rapid succession). However, in *State v. Rainer*, 2d Dist. Montgomery No. 25091, 2013-Ohio-963, we found that the trial court correctly distinguished between the initial knife blows that the appellant inflicted inside the bar and the final blow

he inflicted to the victim's back when she fled the bar area and attempted to escape. The temporal separation between the knife blows, albeit slight, establishes separate acts of felonious assault. This court reached a similar conclusion in *State v. Wilson*, 2d Dist. Montgomery No. 22120, 2008-Ohio-4130, reasoning:

> The evidence in this case demonstrates that Defendant committed two separate and distinct felonious assaults against D'Laquan Phillips, and then murdered him. The initial felonious assault occurred when Michael Phillips heard a gunshot and looked up to see his nephew, D'Laquan Phillips, struggling with Defendant. Although it is unclear from the record whether this first shot struck D'Laquan Phillips, this conduct corresponds to count four of the indictment which charged that Defendant caused or attempted to cause physical harm with a deadly weapon. This first felonious assault was completed before Defendant committed the second felonious assault, which occurred when Defendant shot D'Laquan Phillips in the back as Phillips attempted to flee. This shot struck and incapacitated him. The coroner testified that after being shot in the back, D'Laquan Phillips was paralyzed from the chest down. This conduct corresponds to count three which charged that Defendant caused serious physical harm. This second felonious assault was completed before Defendant stood over D'Laquan Phillips and shot him multiple times in the head, purposely causing his death.
>
> Under these circumstances, we conclude that the felonious assaults were committed separately from and prior to the purposeful murder, and therefore Defendant may be convicted and sentenced for all of those offenses.

*Id.* at ¶¶43-44.

 [*P13]  Upon review, we conclude that the evidence adduced at trial established that Taylor committed a separate and distinct felonious assault against Bryson and then murdered him. Specifically, there were two separate shootings in two separate locations. The first shooting occurred at the intersection of Lincoln and Warren Streets, just outside of Tamlyn's house. After the first round of gunshots, during which he was struck several times, Bryson was able to get up and walk diagonally across the street to 238 Warren Street where he fell down. At that point, Taylor walked over to where Bryson had fallen and shot him several more times at almost point blank range in the head and upper torso.

>Bryson subsequently died where he had fallen in front of 238 Warren Street. While the evidence established that Bryson was shot fourteen times, the testimony provided by the coroner, Dr. Allen, established that the shots that killed Bryson were the ones fired by Taylor in front of the 238 Warren Street address. Similar to our findings in *Wilson*, the evidence in the instant case establishes that the felonious assault occurred and was completed during the first non-fatal round of gunshots in front of Tamlyn's residence located at 116 East Lincoln Street. From there, Bryson was able to get up and walk over to 238 Warren Street where he fell down and the second round of gunshots was initiated by Taylor that ultimately brought about Bryson's death. Under these circumstances, we conclude that the felonious assault was committed separately from and prior to the murder, and therefore, Taylor was properly convicted and sentenced for both of those offenses. Accordingly, the trial court did not err when it refused to merge Taylor's separate convictions for felonious assault and murder.
>
>  [*P14]  Taylor's first assignment of error is overruled.

*State v. Taylor II*.

In arguing this Second Ground for Relief, Taylor again cites no federal constitutional precedent, but relies entirely on Ohio precedent, *State v. Johnson*, 128 Ohio St. 3d 153 (2010), and *State v. Brown*, 119 Ohio St. 3d 447 (2008).  The relevant constitutional provision is the Double Jeopardy Clause of the Fifth Amendment, made applicable to the States by. the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794 (1969). That Clause of the Fifth Amendment to the United States Constitution  affords a defendant three basic protections:

>It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165 (1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

Although Ohio Revised Code § 2941.25, Ohio's allied offense statute, is "a prophylactic statute that protects a criminal defendant's rights under the Double Jeopardy Clause. . ." (*Johnson, supra*, quoted in *Taylor II* at ¶ 9), the concepts and analysis are not identical.

The test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Where two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985); *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses.") The *Blockburger* test is a rule of statutory construction, not a constitutional test in itself. *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013), *citing Albernaz*. "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Volpe, citing Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

"What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment. Specifically, '[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature

14

intended.'"  *Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014), *quoting Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

In his memorandum in support, Petitioner does not quarrel with the Second District's findings of fact from the trial court record, to wit, that the first shooting occurred at the intersection of Lincoln and Warren Streets and the second shooting in front of 238 Warren Street and that the coroner's testimony was that the second set of shots were fatal.  *State v. Taylor II* at ¶ 13.  The Second District concluded that under those circumstances the General Assembly intended separate punishments.  This Court is bound by that interpretation of Ohio Revised Code § 2941.25 and it is conclusive of the Double Jeopardy argument.  *Jackson*, *supra*.

Taylor's Second Ground for Relief, construed as made under the Double Jeopardy Clause, is without merit and should be dismissed.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition herein be DISMISSED WITH PREJUDICE.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

September 16, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

15

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).